UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ELIZABETH VAN OSS, JOAN LUCIEN,
CHASHEM LUCIEN, JIMMIE PUGH, and
PATRICIA LOCKETT, each individually
and on behalf of all others similarly situated,

        Plaintiffs,

DELORES JACKSON and NATASHA
HERBERT, each individually and on behalf
of all others similarly situated,

        Intervening Plaintiffs,

    - against -

NEW YORK STATE; GLADYS CARRION
individually and in her capacity as the
Commissioner of the New York State Office
of Children and Family Services; JEANNE
SAMPLE, individually and in her capacity
as Director, State Central Register, New
York State Office of Children and Family
Services; and CHARLES CARSON,
individually and in his capacity as Assistant
Deputy Counsel and Supervisor, Child
Welfare Services Bureau,

        Defendants.

-------------------------------------------------------X

<u>OPINION AND ORDER</u>

10 Civ. 7524 (SAS)



SHIRA A. SCHEINDLIN, U.S.D.J.:

    This putative class action, brought pursuant to 42 U.S.C. § 1983

1

("section 1983"), challenges the alleged failure by the State of New York to: (1) determine whether indicated instances of child abuse and/or maltreatment are relevant and reasonably related ("R&R") to child-related employment or other child-related activities; and (2) use objective guidelines in conducting R&R reviews.[1] Plaintiffs seek certification of this action as a class action and certification of the following class, consisting of

> all persons who are or will be the subjects of "indicated" reports with the State Central Register and who have timely requested, or will timely request, a "422" or "424-a" amendment or expungement of the Report and who have not had, or will not have, their Reports administratively reviewed to determine whether the Report is reasonably related to employment or licensure in the child care field.[2]

Plaintiffs further seek a preliminary injunction:

> A.    directing that for all current and future 424-a subjects whose reports are founded, the defendants review their reports to determine whether they are reasonably related to child care employment or licensure; and/or

---

[1]    *See* Guidelines for Determining Whether Indicated Instances of Child Abuse and Maltreatment Are Relevant and Reasonably Related to Employment or Licensure ("OCFS Guidelines"), Ex. B to the Declaration of Thomas Hoffman in Support of Motion to Certify the Class and/or to Schedule a Hearing for a Preliminary Injunction ("Hoffman Decl. I").

[2]    Notice of Motion to Certify the Class and/or to Schedule a Hearing for a Preliminary Injunction at 1.

B.    directing defendants to conduct RR reviews using the OCFS [G]uidelines for current and future class members who timely request their report to be amended or expunged; and/or

C.    directing defendants to conduct the administrative review by a preponderance of the evidence for all current and future 424-a clearance requests and to make sure the report is reasonably related to employment or licensure as a day care provider; and/or

D.    enjoining the defendants from disclosing reports that have not had an RR review.[3]

Defendants have opposed plaintiffs' motions for class certification and preliminary injunction and have cross-moved to dismiss this action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and, alternatively, for summary judgment pursuant to Rule 56(a). For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part and defendants' motion for summary judgment is denied.

## I.    BACKGROUND[4]

### A.    The Statutory Framework

The New York State Legislature has declared that "[a]bused and

---

[3]    *Id.* at 2.

[4]    The majority of this section was taken from the undisputed portions of Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1.

maltreated children in this state are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment" and that "[i]t is the purpose of [the Child Protective Services Law] to encourage more complete reporting of suspected child abuse and maltreatment and to establish in each county of the state a child protective service capable of investigating such reports swiftly and competently and capable of providing protection for the child or children from further abuse or maltreatment . . . ."[5]  To accomplish these goals, the New York State Office of Children and Family Services ("OCFS") supervises the child protective services provided by local departments of social services.[6]  Each local social services department is required to establish a Child Protective Service agency ("CPS") to investigate allegations of child abuse and maltreatment.[7]  The CPS for the City of New York is the Administration for Children's Services (the "ACS").[8]

---

[5]     New York Social Services Law ("NY SSL") § 411.

[6]     *See* NY SSL § 421; N.Y. Comp. Codes R. & Regs. Tit. 18, Ch. II, Subch. C, Art. 2, Pt. 432 ("18 N.Y.C.R.R.").

[7]     *See* NY SSL § 423.

[8]     *See Finch v. Office of Children and Family Servs.*, 499 F. Supp. 2d 521, 525-26 (S.D.N.Y. 2007).

The OCFS operates the Statewide Central Register of Child Abuse and Maltreatment ("SCR").[9]

> The purpose of the SCR is to have, in one central location, the names of all known subjects of indicated reports of child abuse and maltreatment in New York State so that the information may be used when needed to conduct appropriate investigations and database checks, either for the protection of children named in those reports or for the protection of other children who might come into contact with the subject of the report. The SCR receives telephone calls alleging child abuse or maltreatment. When any allegations contained in such telephone calls could reasonably constitute a report of child abuse or maltreatment of a child located in the City of New York, such allegations are immediately transmitted by the SCR to the [CPS] for investigation.[10]

Under the Social Services Law, inquiring agencies are required to request a search of the SCR database before employing, certifying or licensing persons in the child care field.[11]

---

[9]   *See id.* § 422(1).

[10]   *Finch*, 499 F. Supp. 2d at 526 (footnotes omitted).

[11]   *See* NY SSL 424-a. While the existence of an indicated report does not absolutely bar employment, certification or licensure in the child care field, disclosure of an indicated report to an inquiring agency is done to prevent the agency from unknowingly allowing a subject of an indicated report to have regular and substantial contact with children cared for by that agency. *See Finch*, 499 F. Supp. 2d at 527 n.26.

The CPS investigates allegations to determine whether a report of child abuse/maltreatment is "indicated" or "unfounded."[12]  A report is "indicated" if an investigation determines that there is some credible evidence of the alleged abuse/maltreatment.[13]  A report is "unfounded" if an investigation determines that there is no credible evidence of alleged abuse/maltreatment.[14]  The person allegedly responsible for injuring, abusing or maltreating a child is referred to as the "subject of the report" or the "subject."[15]

The CPS notifies the SCR of the result of its investigation – whether the report of child abuse/maltreatment concerning was determined to be indicated or unfounded.[16]  If the CPS determines that the report is unfounded, the SCR notifies the subject that the report was unfounded and has been sealed.[17]  If the CPS determines that the report is indicated, the CPS notifies the subject that the report was indicated and that the subject has the right to request that the report be

---

[12]     *See* NY SSL § 424(7).

[13]     *See id.* § 412(7).

[14]     *See id.* § 412(6).

[15]     *Id.* § 412(4)

[16]     *See id.* § 424(7); 18 N.Y.C.R.R. § 432.3(k).

[17]     *See* 18 N.Y.C.R.R. § 432.9(b).

amended or expunged.[18]

Subjects of indicated reports have two opportunities to request amendment of a report from indicated to unfounded: first, immediately after being notified that the report was indicated;[19] and second, prior to the disclosure of an indicated report in response to a request by an "inquiring agency."[20] Requests for amendment of an indicated report made at the time the report is indicated are referred to as "422 requests" or "422 hearings." Requests for amendment of an indicated report triggered by an inquiring agency's inquiry about a subject are referred to as "424-a requests" or "424-a hearings."

Upon receipt of a request to amend an indicated report, the OCFS obtains all records, reports and any other information maintained by the CPS concerning an indicated report.[21] The OCFS reviews all of the materials

---

[18]    See id. § 432.3(k)(1).

[19]    See id. § 422(8)(a)(i).

[20]    See NY SSL § 424-a. "Inquiring agencies," which are comprised of provider agencies, see id. § 424-a(3), and licensing agencies, see id. § 424-a(4), are agencies that either employ, license or otherwise authorize adults to be involved with children. Such agencies include adoption agencies, foster care agencies, child day care providers, and providers of residential facilities for children.

[21]    See id. § 422(8)(a)(ii).

forwarded by the CPS (the "administrative review" or "AR")[22] and determines whether there is a fair preponderance of evidence to find that the subject committed the act(s) of child abuse/maltreatment giving rise to the indicated report.[23] Although plaintiffs dispute whether and how R&R reviews are being done by the CWSB, the OCFS is statutorily mandated to determine, on administrative review and based on the OCFS Guidelines, whether the act(s) of child abuse/maltreatment could be: (1) relevant and reasonably related to employment of the subject by a provider agency; or (2)  relevant and reasonably related to the subject being allowed to have regular and substantial contact with children cared for by a provider agency; or (3) relevant and reasonably related to the approval or disapproval of an application submitted by the subject of an indicated report to a licensing agency.[24] If the administrative review determines

---

[22]     Administrative reviews are conducted by the Child Welfare Services Bureau ("CWSB"), which is a unit of the OCFS.  The AR is based on a document only examination.

[23]     *See id.*

[24]     Although questions concerning the R&R determination are in dispute, the OCFS is statutorily mandated to determine on administrative review, based on the OCFS Guidelines, whether the act(s) of child abuse/maltreatment could be relevant and reasonably related to employment of the subject by a provider agency, or relevant and reasonably related to the subject being allowed to have regular and substantial contact with children cared for by a provider agency, or relevant and reasonably related to the approval or disapproval of an application submitted by the subject of an indicated report to a licensing agency. *See id.* § 422(8)(a)(ii).

that there is no credible evidence that the subject committed the act(s) of child

abuse/maltreatment, the OCFS amends the report to reflect that the allegations

against the subject are unfounded and notifies the subject and the CPS forthwith.[25]

If the administrative review determines that there is some credible evidence that

the subject committed the act(s) of child abuse/maltreatment, the OCFS informs

the subject of its determination and refers the matter for an administrative

hearing.[26]

      Indicated reports retained after administrative review are forwarded to

the Bureau of Special Hearings ("BSH"), a unit of the OCFS, for an administrative

hearing.[27]  Administrative reviews are conducted before an administrative law

judge ("ALJ").[28]  All 422 hearings address the issue of whether there is a fair

preponderance of evidence to support the finding of an indicated report of child

abuse/maltreatment.  Upon a determination that the subject has been shown by a

fair preponderance of evidence to have committed the act(s) of child

---

[25]    *See id.* § 422(8)(a)(iii).  In response to 424-a requests, the OCFS takes the additional step of informing the inquiring agency that the person inquired about is not the subject of an indicated report.

[26]    *See id.* § 422(8)(a)(v).

[27]    *See id.* § 422(8)(b).

[28]    *See* 18 N.Y.C.R.R. § 434.6(a).

abuse/maltreatment, the ALJ then determines, based on the OCFS Guidelines,

whether such acts are R&R.[29]  At 424-a hearings, the sole question before the ALJ

is whether the subject who was denied access to the children cared for by a

provider agency has been shown by a fair preponderance of the evidence to have

committed the act or acts of child abuse/maltreatment giving rise to the indicated

reports.[30]  In other words, the ALJ does not conduct a separate R&R review at 424-

a hearings.  Consequently, a 422 requester gets two R&R reviews – the  first at the

administrative review stage and the second at the administrative hearing – while a

424-a requester gets only one R&R review (at the time of the administrative

review).  However, if the subject of an indicated report is dissatisfied with the

Commissioner's decision,[31] after either a 422 hearing or a 424-a hearing, the

subject may seek judicial review through a proceeding brought pursuant to Article

78 of the New York Civil Practice Law and Rules.

## B.      Plaintiffs' Allegations

Plaintiffs allege that R&R determinations are not made at the

---

[29]      *See* NY SSL § 422(8)(c)(ii).

[30]      *Id.* § 424-a(2)(d).

[31]      *See* 18 N.Y.C.R.R. § 434.11(a) ("Hearing decisions must be made and
issued by the [C]ommissioner . . . . The decision must be based exclusively on the
record of the hearing.").

administrative review level.[32]  Plaintiffs also allege that the OCFS does not notify

the subject of an indicated report of the opportunity to submit, to the administrative

reviewers, information relevant to the R&R determination.[33]  Finally, plaintiffs

allege that the CWSB does not use or consider the OCFS Guidelines to determine

if a report is R&R.[34]  Plaintiffs' First Cause of Action states that "[t]here is no

standard of proof that the State applies to establish that a report is RR."[35]  Plaintiffs

further allege that the

> actions of each of the defendants in failing to apply
> standards to the RR review or to undertake the RR review
> delays the issuance of clearances and is an unlawful and an
> unconstitutional deprivation of plaintiffs' property and
> liberty interest without due process of law in violation of
> the Fourteenth Amendment of the United States
> Constitution.[36]

Plaintiffs' Second Cause of Action states that the R&R review done at the

---

[32]     *See* Complaint dated October 1, 2010 ¶ 63 ("Despite the OCFS
[G]uidelines and despite the RR review being statutorily mandated, the RR is not
conducted."). *See also id.* ¶¶ 102, 104.

[33]     *See id.* ¶ 66 ("While CWSB looks for RR information from the
subject, the subject is never told that such information should be submitted to the
administrative reviewer[.]").

[34]     *See id.* ¶ 68 ("The reviewer does not use or consider guidelines that
have been issued by OCFS to determine if a report is RR.").

[35]     *Id.* ¶ 113.

[36]     *Id.* ¶ 115.

administrative review stage is arbitrary and capricious.[37]   Consequently, the

> actions of the defendants in disclosing reports without
> having conducted an RR and failing to use objective criteria
> and standards in conducting RR reviews is an
> unconstitutional deprivation of plaintiffs' property and
> liberty interests without due process of law in violation of
> the due process and equal protection clause of the United
> States Constitution.[38]

In sum, plaintiffs complain that R&R reviews are not being done at the time of the

administrative review.  Alternatively, plaintiffs complain that if the R&R review is

being done at the administrative review stage, the CWSB does not apply objective

criteria and standards, such as the OCFS Guidelines, in determining whether a

report is R&R.  Plaintiffs do not allege that section 424-a, which prohibits an ALJ

from conducting an R&R review at a 424-a hearing, is unconstitutional.

## II.   LEGAL STANDARDS

### A.   Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction

under Rule 12(b)(1) when the district court lacks the statutory or constitutional

power to adjudicate it."[39]   The plaintiff bears the burden of proving the existence of

---

[37]     *See id.* ¶ 117.

[38]     *Id.* ¶ 118.

[39]     *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

subject matter jurisdiction by a preponderance of the evidence.[40]  "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."[41]  In resolving a motion to dismiss under Rule 12(b)(1), a court may consider evidence outside the pleadings, including affidavits submitted by the parties, and is not limited to the face of the complaint.[42]

## B.    Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[43]  "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'  A fact is material if it 'might affect the outcome of the suit

---

[40]    *See Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) ("[T]he party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction.").

[41]    *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004).

[42]    *See Robinson v. Government of Malaysia*, 269 F.3d 133, 140-41 (2d Cir. 2001).

[43]    Fed. R. Civ. P. 56(c).

under the governing law.'"[44]  "[T]he burden of demonstrating that no material fact

exists lies with the moving party . . . ."[45]  "When the burden of proof at trial would

fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a

lack of evidence . . . on an essential element of the nonmovant's claim."[46]  In turn,

to defeat a motion for summary judgment, the non-moving party must raise a

genuine issue of material fact.  To do so, the non-moving party must do more than

show that there is '"some metaphysical doubt as to the material facts,'"[47] and

"'may not rely on conclusory allegations or unsubstantiated speculation.'"[48]

However, "'all that is required [from the non-moving party] is that sufficient

evidence supporting the claimed factual dispute be shown to require a jury or judge

---

[44]    *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[45]    *Miner v. Clinton County*, 541 F.3d 464, 471 (2d Cir. 2008).  *Accord Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

[46]    *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). *Accord In re September 11 Litig.*, 500 F. Supp. 2d 356, 361 (S.D.N.Y. 2007) ("Where the nonmoving party bears the burden of proof at trial, the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.") (quotation marks and citations omitted).

[47]    *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

[48]    *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

to resolve the parties' differing versions of the truth at trial."'[49]

"In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party."[50] However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[51]   Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[52]

## III.   DISCUSSION

### A.   Motion to Dismiss

#### 1.   The Original Named Plaintiffs

The five named plaintiffs who were originally intended to represent the proposed class are: Elizabeth Van Oss, Joan Lucien, Chashem Lucien, Jimmie Pugh, and Patricia Lockett.  Plaintiffs Van Oss and Pugh both made section 422

---

[49]    *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson*, 477 U.S. at 248-49).

[50]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citing *Anderson*, 477 U.S. at 242, 255).

[51]    *Id.* (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).

[52]    *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).  *Accord Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009).

requests. The local CPS that investigated the allegations against Van Oss and Pugh

decided not to proceed against them at their administrative hearings.[53] The OCFS

therefore modified its records to reflect that the formerly indicated reports were

unfounded.[54] The indicated reports of plaintiffs Joan and Chashem Lucien were

unfounded at the administrative review stage.[55] In July of 2010, plaintiff Lockett

was advised of a 424-a inquiry. In response, Lockett exercised her right to have

her indicated report reviewed. On September 22, 2010, the administrative review

expunged Lockett's indicated report.[56] If 424-a inquiring agencies inquire about

Lockett, they will receive a "no hit" letter.[57]

       Thus, defendants argue that the claims of the 422 requesters Van Oss,

Pugh and the Luciens regarding the R&R review at the administrative review level

---

[53]    *See* Decision SH #: 60887 and Decision SH #: 61478, Ex. O to the Declaration of Thomas Hoffman, dated January 28, 2011 ("Hoffman Decl. II").

[54]    *See id.*

[55]    *See* 1/26/11 Letters from OCFS to the Luciens, Ex. P to Hoffman Decl. II.

[56]    *See* 12/16/10 Declaration of Roberta J. Frederick ("Frederick Decl."), Assistant Director of the SCR, ¶ 50.

[57]    *See, e.g.,* 10/3/10 Letter from OCFS to Agency Liaison, Ex. 6 to Frederick Decl.

are moot.[58]  Van Oss' and Pugh's indicated reports were determined to be

unfounded at the hearing stage.  It is unclear from the record whether R&R review

was done at the administrative review level or if their reports were presumed to be

R&R.[59]  The Luciens' indicated reports were determined to be unfounded at the

administrative review stage, which obviated the need to make an initial R&R

determination.

   Plaintiffs' respond to defendants' mootness argument by invoking the

"relation back" doctrine.  According to plaintiffs,

> special mootness rules apply to class action representatives.
> Exceptions to the general rule of mootness apply where: (1)
> a class  has  already  been  certified;  and/or  (2)  where  a

---

[58] Because Lockett's claim regarding R&R became moot when her report was expunged on administrative review, she too is dismissed from this lawsuit.

[59] Plaintiffs allege that the CWSB does not determine whether indicated reports are R&R.  All reports are presumed to be R&R, the determination of which is automatic.  *See* Hoffman Decl. I at ¶¶ 12-14.  *See also* 4/2/10 Declaration of Charles Carson, Assistant Deputy Counsel of the CWSB, ¶ 8 ("The attorneys operate under the presumption that an indicated report is relevant and reasonably related to employment or licensure in the child care field, unless there is information in the record that addresses this issue.  As there is almost never any information in the record addressing this issue, the determination that an indicated report is relevant and reasonably related to employment or licensure in the child care field is automatically made in almost all cases."), Ex. C to Hoffman Decl. I; 5/20/10 Deposition of Carson at 62 (stating that R&R review is done in every case but that the R&R determination is "pretty much pro forma in those cases because there is no basis to conclude that the case is not relevant and reasonably related"), Ex. F to Hoffman Decl. I.

> motion for class-certification is pending.  The additional
> rationale pertinent to this action, for the class exception rule
> that certification relates "back to the filing of the
> complaint" is to prevent defendants from 'picking off' class
> representatives and thereby allowing issues to evade
> review.  The "relation back doctrine" is invoked to preserve
> the merits of the case for judicial resolution.[60]

Defendants object to plaintiffs' application of the relation back doctrine on

ripeness grounds.  According to defendants, if the 422 requesters' claims must be

seen to "relate back" to the date of the filing of the complaint or the class

certification motion, at a time when none of the indicated reports had yet been

determined to be unfounded, such claims would be premature and not ripe for

judicial review.  Defendants thus argue that claims regarding R&R at the

administrative review stage, made by subjects with pending 422 requests for

administrative hearings, are not ripe for resolution as cases or controversies.[61]

---

[60]    Plaintiffs' Memorandum of Law in Reply and in Answer to Cross
Motion for Summary Judgment ("Pl. Reply") at 38 (citations omitted, quotation
marks in original, format condensed).  Plaintiffs also make the following statement,
unsupported by any legal authority: "Even without injury, standing can be met
where there is a deprivation of a right." *Id.* at 15.  This statement is less than
crystal clear.  Perhaps plaintiffs are saying that the deprivation of a right is the
injury.  But this interpretation ignores the first three words "even without injury."

[61]    To establish Article III standing, a plaintiff must demonstrate that a
"case or controversy" exists. *Gladstone Realtors v. Village of Bellwood*, 441 U.S.
91, 99 (1979).  To show that a case or controversy exists, a plaintiff must show
three elements: (1) injury in fact; (2) a causal nexus between the complained-of-
conduct and the injury; and (3) redressability of the injury. *See Lujan v. Defenders
of Wildlife*, 504 U.S. 555, 560-61 (1992).

> A complaint about an R&R either not being done at all, or being done in a way not satisfactory to a plaintiff who made a 422 request, is not ripe for judicial review because (1) the local CPS might not choose to proceed at the administrative hearing stage, thereby unfounding the report; or (2) the ALJ might weigh the evidence presented by both sides at the hearing and unfound the report; or (3) the ALJ at any 422 administrative hearing may determine to retain an indicated report and find that it is not R&R; or (4) a Supreme Court Justice reviewing a 422 hearing decision that retains a report and finds it to be R&R can either unfound the report or find that the determination to retain was correct but the R&R determination was incorrect.[62]

Plaintiffs' answer to this argument is straightforward: "Although the 422 litigants' deprivation [of R&R review] may be eventually remedied by the R&R review at the hearing, 422s still suffer a deprivation of a 'legally protected interest' that is 'concrete and particularized.'"[63]  Presumably, plaintiffs are referring to the situation wherein the reports of some 422 requesters would have been unfounded earlier, at the administrative review stage, if the R&R review had been done at that stage.  Forcing these 422 requesters to wait for an administrative hearing to have their reports unfounded (based on no R&R) is the alleged "injury in fact."  But, unlike the situation with 424-a requests, there is no exigency associated with 422 requests.  Thus, the alleged injury in the context of a 422

---

[62]     Defendants' Reply Memorandum of Law in Further Support of Their Cross-Motion for Summary Judgment ("Def. Reply") at 4-5.

[63]     Pl. Reply at 16.

request is the 422 requester's fear or anxiety, during the interim period between the time of the administrative review and the time of the administrative hearing, that an indicated report will be retained.  But any fear or anxiety could not possibly relate to R&R review, or lack thereof, because the OCFS does not advise subjects of the R&R review.[64]  Thus, any alleged injury is simply too speculative to establish the injury in fact needed for Article III standing.  I therefore conclude that the claims of the named 422 requesters – Van Oss, Pugh, and the Luciens – must be dismissed for lack of jurisdiction.[65]

## 2.    The Intervening Plaintiffs

The intervening plaintiffs, Delores Jackson and Natasha Herbert, present a different situation.  Plaintiffs allege that Jackson and Herbert were denied R&R review at the administrative review stage.[66]  This allegation must be assumed

---

[64]    *See, e.g.,* 8/2/10 Letter from OCFS to Lockett, Ex. I to Hoffman Decl. I.  This letter neither advises the subject that an R&R review will be done at the administrative review, nor does it ask the subject to submit information relevant to R&R.

[65]    Although plaintiffs' class certification motion will be addressed in a separate Opinion and Order, these plaintiffs cannot represent the proposed class given that their claims have been dismissed.  Whether the proposed class should exclude all 422 subjects who have pending requests for administrative hearings, where the R&R review will be revisited, will be addressed therein.

[66]    On September 28, 2010 and October 5, 2010, the requests by Jackson and Herbert to seal or expunge their reports were denied after administrative reviews were completed.  *See* 9/28/10 Letter from the SCR to Jackson ("Jackson

to be true for purposes of deciding subject matter jurisdiction.[67]  Both Jackson and

Herbert are now awaiting administrative hearings where the only question to be

addressed is whether the subject committed the act(s) of child

abuse/maltreatment.[68]  While it is true that their indicated reports might be

unfounded at the administrative hearing stage, they will not be unfounded on the

basis of not being R&R.  Accordingly, both Jackson and Herbert have suffered a

concrete injury in fact in being deprived of R&R review at the administrative

review stage, the deprivation of which will not be remedied by any subsequent

hearing.[69]  Given these injuries, the claims of Jackson and Herbert are ripe for

resolution and will not be dismissed for lack of subject matter jurisdiction.

### 3.     The Eleventh Amendment

The Eleventh Amendment to the United States Constitution bars a

---

Letter") and 10/5/10 Letter from the SCR to Herbert ("Herbert Letter"), Exs. E and
I to Hoffman Decl. II, respectively.

[67]     *See supra* Part II.A.

[68]     *See* Herbert Letter and Jackson Letter at 1 ("The only question to be
addressed at such a hearing is whether it has been shown by a fair preponderance
of the evidence that you committed the act or acts of child abuse or maltreatment
on which the indicated report is based.").

[69]     "If it had been found at the initial review that the act was 'Not R&R,'
Herbert would have received her license to operate a group day care facility with
her daughter."  Pl. Reply at 17 (citing Intervenor's Complaint ¶¶ 33-35).

21

federal suit by a citizen against a state, or one of its agencies, absent consent to suit

or an express statutory waiver of immunity.[70]  It is well-settled that the State of

New York has not consented to suit in federal court[71] and the provisions of section

1983 were not intended to override a state's immunity.[72]  This Court's jurisdiction

over the individual State defendants is limited to potentially redressing, on a

prospective basis only, ongoing violations of federal law.[73]  To the extent that

plaintiffs have not withdrawn their claims against the State of New York, those

claims must be dismissed.[74]

### a.    Retrospective Relief

The Eleventh Amendment "applies only to prospective relief [and]

does not permit judgments against state officers declaring that they violated federal

---

[70]     *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100
(1984); *Alabama v. Pugh*, 438 U.S. 781 (1978).

[71]     *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40
(2d Cir. 1977).

[72]     *See Quern v. Jordan*, 440 U.S. 332, 343 (1979).

[73]     *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)
("[I]mplementation of state policy or custom may be reached in federal court only
because official-capacity actions for prospective relief are not treated as actions
against the State.") (citing *Ex parte Young*, 209 U.S. 123 (1908)).

[74]     *Id.* ("Unless a State has waived its Eleventh Amendment immunity or
Congress has overridden it, . . . a State cannot be sued directly in its own name
regardless of the relief sought.") (citing *Alabama v. Pugh*, 438 U.S. 781, 782
(1978) (*per curiam*)).

law in the past."[75]  Plaintiffs contend that they are not seeking retrospective relief

and that the injunctive relief sought "seeks to remedy the ongoing R&R

deprivation without due process of law."[76]  However, the last category of injunctive

relief sought – enjoining defendants from disclosing reports that have not had an

R&R review – may necessitate retrospective relief in some circumstances.  For

example, assume a 424-a indicated report was retained after an administrative

hearing.  Assume further that the R&R review that was supposed to be done at the

administrative review stage was either nonexistent or rubber-stamped.  Prohibiting

future disclosure of such report would, in effect, force the OCFS to either seal an

otherwise indicated report or conduct a separate R&R review for that report.  In

choosing the latter, the OCFS would be forced to rectify past federal constitutional

violations, a result prohibited by the Eleventh Amendment.  Therefore, plaintiffs'

claims implicating this sort of injunctive relief must be denied.[77]

### b.    Enforcement of State Law

The Eleventh Amendment also bars federal courts from granting relief

---

[75]    *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506
U.S. 139, 146 (1993) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)).

[76]    Pl. Reply at 18.

[77]    Plaintiffs' request for injunctive relief will be addressed in more detail
after a preliminary injunction hearing is held.

against state officials for alleged violations of state law.[78]  In this regard, the

Supreme Court has stated:

> A federal court's grant of relief against state officials on the
> basis of state law, whether prospective or retroactive, does
> not vindicate the supreme authority of federal law.  On the
> contrary, it is difficult to think of a greater intrusion on
> state sovereignty than when a federal court instructs state
> officials on how to conform their conduct to state law.
> Such a result conflicts directly with the principles of
> federalism that underlie the Eleventh Amendment.[79]

Defendants argue that plaintiffs, by alleging that defendants do not make R&R

determinations at administrative reviews, are seeking the enforcement of state law.

While this argument may have some initial appeal, it does not hold up on close

scrutiny.  Plaintiffs argue that the failure of state officials to conduct R&R reviews

is a constitutional due process violation.  Thus, plaintiffs are not seeking to direct

state officials to comply with state law.  Rather, plaintiffs are seeking to compel

state officials to comply with constitutional due process safeguards before denying

subjects of their statutorily-created right to an R&R review.  Although it is a subtle

distinction, the Eleventh Amendment's prohibition against the enforcement of state

law is inapplicable here.

---

[78]     *See Pennhurst*, 465 U.S. at 103.

[79]     *Id.* at 106.

### 4.  Injunctions Against Officers in Their Judicial Capacity

Defendants argue that plaintiffs' claims to compel ALJs to conduct R&R reviews in the first instance, or conduct them in a certain manner, must be dismissed as they seek to enjoin conduct of judicial officers in their judicial capacity, relief which is unavailable under section 1983.[80]  In *Montero v. Travis*, the Second Circuit stated that it is

> well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages. This immunity also extends to administrative officials performing functions closely associated with the judicial process because the role of the "hearing examiner or administrative law judge . . . is 'functionally comparable' to that of a judge."[81]

This immunity extends to injunctive relief as well as money damages.

> Absolute immunity bars not only Montero's § 1983 claim for damages but also his claim for injunctive relief.  The 1996 amendments to § 1983 provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was

---

[80]    *See* Defendants' Memorandum of Law in Support of Their Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motions fro Class Certification and a Preliminary Injunction ("Def. Mem.") at 18-19 (citing *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999)).

[81]    *Montero*, 171 F.3d at 760 (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)).

violated or declaratory relief was unavailable."[82]

Plaintiffs respond that because the named defendants (Carrion, Sample and Carson) are not "judicial officers" acting in a "judicial capacity," there is no bar to section 1983 injunctive relief.  The issue, however, is not as clear cut as plaintiffs portray.  While it is true that the Commissioner of the OCFS (Carrion), the Director of the State Central Register (Sample), and the Supervisor of the CWSB (Carson) are not judicial officers acting in a judicial capacity, it is conceivable that the injunctive relief requested may necessitate action on the part of the ALJs.  For example, the third category of injunctive relief[83] may require ALJs to conduct R&R reviews at 424-a hearings if this Court were to find that R&R reviews were not conducted, or were conducted in a less than satisfactory manner, at the administrative review stage which has occurred for certain subjects with *current* 424-a clearance requests.  Thus, to the extent that the relief requested by plaintiffs does, in fact, implicate the conduct of the ALJs, such relief must be denied and any

---

[82]     *Id.* at 761 (quoting Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104-317, 110 Stat. 3847, 3853 (1996)).

[83]     The third category seeks a preliminary injunction directing defendants to conduct the administrative review by a preponderance of the evidence for all *current* and future 424-a clearance requests and to ensure the report is reasonably related to employment or licensure as a day care provider.

claims requesting such relief must be dismissed.[84]

### 5.    The Availability of Article 78 Proceedings

Defendants argue that plaintiffs' claims should be dismissed because they are more properly reviewable in New York State court pursuant to Article 78. Plaintiffs argue that the R&R deprivation is systemic and that where the deprivation is systemic, litigants have a well-established right to pursue their claims in federal court without resorting to state judicial remedies.  Although plaintiffs could bring their individual claims in state court under Article 78, they are not required to do so.

> [I]nasmuch as plaintiffs claim that the federal Constitution requires the state court to offer a remedy that is currently not available under state or local law, this constitutional challenge need not proceed through the state court before it reaches the federal courts. *See Kraebel v. N.Y. City Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 404–06 (2d Cir. 1992) (addressing the claim that an Article 78 proceeding provided all the process plaintiff was due, and finding that "[i]t is well-established that [42 U.S.C.] § 1983 generally allows plaintiffs with federal or constitutional claims the right to sue in federal court without first resorting to state judicial remedies")[.][85]

Thus, the availability of Article 78 proceedings is not a ground on which to dismiss

---

[84]    As stated previously, the scope of the preliminary injunctive relief to be afforded plaintiffs will be addressed in further detail after the preliminary injunction hearing.

[85]    *Krimstock v. Kelly*, 306 F.3d 40, 60 (2d Cir. 2002).

plaintiffs' federal constitutional claims.

### B.    Summary Judgment

#### 1.    Lack of Discovery

In response to defendants' motion for summary judgment, plaintiffs

state that "[t]he State's motion is made before any discovery has been

undertaken."[86]  This Court subsequently directed plaintiffs' counsel to file a Rule

56(f) affidavit outlining the types of discovery needed for plaintiffs to properly

oppose the motion.  In distinguishing this case from a previous case before this

Court, plaintiffs' counsel stated as follows:

> Before fact discovery could begin, the State defendants
> moved for summary judgment.  The State's motion relies
> upon some of the facts developed in discovery in *Finch v.
> State*, (04 CIV 1668) (SAS).  However, the issues in *Finch*,
> are different that those raised in *Van Oss*.  The two central
> *Finch* issues were the timeliness of hearing and the
> improper termination of requests for hearings.  The *Van
> Oss* question is whether subjects are afforded due process
> when the Administrative Review ("AR") determines, as
> required under the law, if the Report is relevant to child
> care.  Only where relevant is a Report disclosable to a
> prospective employer or licensing agency.[87]

Despite the above statements complaining about a lack of fact discovery, plaintiffs

have opposed defendants' summary judgment motion.  Furthermore, defendants'

---

[86]    Pl. Reply at 23 n.18.

[87]    Rule 56(f) Declaration of Thomas Hoffman ¶ 3.

counsel is of the view that further fact discovery would be futile.

> To put the defendants' position briefly, further discovery is futile because plaintiffs already know, and have presented to this Court, the issues of fact that have lead to the instant complaint. Plaintiffs' exhibits contain the transcript of Mr. Carson, whom plaintiff acknowledges is the representative of defendants most knowledgeable about the R&R process. His statements are not equivocal. Similarly, plaintiffs have attached copies of challenged notices to Mr. Hoffman's declarations as exhibits. The discovery proposed in plaintiffs' counsel's Declaration will yield much more of the same.

Because I agree with defendants' counsel, I will now address the merits of the motion.

### 2.     Disputed Issues of Material Fact

Having both Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1") and Plaintiffs' Counter Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1"), I will summarize some of the more salient issues of material fact that are in dispute.

| Defendants' 56.1 | Plaintiffs' 56.1 |
|---|---|
| 7.   The CPS that investigates the allegations notifies subjects of the investigation in writing of the existence of the report and their respective rights in regard to amendment. | 7.   Controverted. The CPS does not advise subjects of their right to submit information regarding whether the act(s) were relevant to child care. |

29

28. Where the administrative review finds that there *is* a fair preponderance of evidence to support the finding that the report is indicated, the administrative review also determines whether, based on guidelines developed by the OCFS, such act or acts *could be* relevant and reasonably related to employment of the subject of the report by a provider agency, or relevant and reasonably related to the subject of the report being allowed to have regular and substantial contact with children cared for by a provider agency, or relevant and reasonably related to the approval or disapproval of an application submitted by the subject of the report to a licensing agency. (emphasis in original).

28. Controverted. The administrative review does not apply the OCFS guidelines to determine whether the report is R&R.

31. The SCR notifies the subject that the matter has been referred for a hearing since the SCR determined that there was sufficient evidence to retain the indicated report, and also notifies the subject of the administrative review's separate determination about whether the indicated report is or is not R&R to child care activity.

31. Controverted. The SCR does not notify the subject of the administrative review's separate determination about whether the report is or is not R&R to child care.

| | | | |
|---|---|---|---|
| 58. | R&R determinations are made at every administrative review. | 58. | Controverted. Determinations of whether the act(s) are related to child care are not made at the administrative review. |
| 59. | Administrative reviewers use the OCFS guidelines when making R&R determinations. | 59. | Controverted. Administrative reviewers do not apply the OCFS guidelines. |
| 61. | Administrative reviewers "do an R&R, but lacking information upon which to really assess that, it is a pro forma determination in practically every case." | 61. | Controverted. It is controverted that administrative reviewers conduct a review to determine whether the act(s) are R&R to child care. |

Thus, there are disputed issues of material fact regarding: (1) whether the OCFS conducts R&R reviews at the administrative review stage; and (2) if it does, whether the OCFS applies its guidelines in conducting those R&R reviews. Assuming that the OCFS fails to do either, or both, the next question is whether that failure results in a violation of due process. This constitutional inquiry represents the penultimate issue to be decided in this case. The purpose of summary judgment is to determine whether there are material issues of fact that must be decided by the trier of fact; it is not to decide those facts. Plaintiffs have requested a jury trial in the Complaint. Thus, whether plaintiffs have been deprived of their right to R&R review without due process of law is a question to

be decided by a jury, not this Court.[88]

## IV.   CONCLUSION

For the reasons stated above, defendants' cross-motion to dismiss is granted in part and denied in part.  Defendants' cross-motion for summary judgment is denied.  A preliminary injunction hearing has been scheduled for May 17, 2011, at 10:00 a.m. in Courtroom 15C.  Counsel should be prepared to also discuss issues relating to class certification.  The Clerk of the Court is directed to close defendants' cross-motions (Document # 13).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 25, 2011

---

[88]      Both sides have devoted substantial portions of their briefs in addressing this question.  *See* Def. Mem. at 19-23, Pl. Reply at 23-30, Def. Reply at 8-9.  This briefing would be helpful if the parties opted for a bench trial but it is irrelevant in deciding the summary judgment motion.

32

## - Appearances -

**For Plaintiffs:**

Thomas Hoffman, Esq.
Law Offices of Thomas Hoffman, P.C.
250 West 57th Street, Suite 1020
New York, NY 10107
(212) 581-1180

**For Defendants:**

Robert L. Kraft
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271
(212) 416-8632